Brian T. MURPHY and Shelly F. Murphy, Plaintiffs and Respondents,

v.

Todd CROSLAND and Jeff Crosland, Defendants and Petitioner.

No. 950055.

Supreme Court of Utah.

Feb. 12, 1996.

Rehearing Denied April 29, 1996.

Scott B. Mitchell, Salt Lake City, for the Murphys.

Ellen Maycock, David C. Wright, Salt Lake City, for Todd Crosland.

Gerald H. Kinghorn, David W. Scofield, Salt Lake City, for Jeff Crosland.

DURHAM, Justice:

This case involves review of *Murphy v. Crosland*, 886 P.2d 74 (Utah Ct.App.1994), *cert. granted*, 899 P.2d 1231 (Utah 1995). The court of appeals reversed the trial court's grant of summary judgment in favor of defendant Todd Crosland and held him personally liable for negotiating and executing guarantee agreements on behalf of a corporation operating under suspended status. We affirm.

Todd Crosland was the president, director, and principal shareholder in Crosland Industries. Incorporated in Utah in January 1986, Crosland Industries' corporate status was suspended on March 1, 1987, for failure to file its annual report pursuant to Utah Code Ann. § 16–10–88.2 (1987). On January 8, 1988, plaintiffs Brian and Shelly Murphy (the Murphys) entered into a contract to sell their cinnamon roll store, Granny's Buns, to Arnold Swenson. Although its corporate status was suspended, Crosland Industries, with full agreement of all board members and through its vice president and director Jeff Crosland, guaranteed Swenson's performance on both the sales contract and the note. Thereafter, having failed to remedy its suspended status,

Crosland Industries was involuntarily dissolved on March 1, 1988.

Swenson subsequently defaulted under the terms of both the promissory note and the security agreement, and Crosland Industries failed to honor its guarantee. The Murphys obtained a default judgment against Swenson and Crosland Industries and brought suit against Todd and Jeff Crosland, inter alia, to hold both defendants jointly and severally liable under Utah Code Ann. § 16–10–139 (1987). On August 14, 1990, the Murphys moved for partial summary judgment against Jeff and Todd Crosland pursuant to section 16–10–139. The trial court granted partial summary judgment against Jeff Crosland on the ground that he was personally liable for signing a contract on behalf of a "non-existent" corporation. As to Todd Crosland, the trial court denied partial summary judgment on the ground that an issue of fact remained because he had not personally signed the guarantee. Todd Crosland then moved for summary judgment, contending that section 16–10–139 does not impose personal liability on corporate officers when corporate authority is suspended rather than terminated. In response to Todd Crosland's motion, the Murphys stipulated to the dismissal of all other claims against Todd Crosland except his liability under section 16–10–139. The trial court granted Todd Crosland's motion for summary judgment on the ground that section 16–10–139 did not impose personal liability under these circumstances.

On March 18, 1993, the Murphys filed a timely notice of appeal of the summary judgment in favor of Todd Crosland. On the following day, Jeff Crosland filed a rule 59 motion to amend the summary judgment against him or for a new trial. On May 25, 1993, the trial court entered an order denying Jeff Crosland's rule 59 motion and thus disposed of the matter in its entirety. On June 29, 1993, Todd Crosland moved to dismiss the Murphys' appeal because their notice of appeal was premature due to the intervening rule 59 motion and because they had not filed a notice of appeal within thirty days after the order denying Jeff Crosland's motion. In response, on July 7, 1993, the

Murphys moved to extend the time in which to file their notice of appeal pursuant to rule 4(e) of the Utah Rules of Appellate Procedure. The trial court, finding "good cause," granted the Murphys' motion, and the Murphys' subsequent notice of appeal was filed on July 14, 1993.

In *Murphy*, the Utah Court of Appeals reversed the trial court's grant of summary judgment in favor of Todd Crosland. Specifically, the court interpreted Utah Code Ann. §§ 16–10–88.2 and 16–10–139 to impose personal liability on corporate officers for acts done while the corporation is suspended:

> [W]e conclude that a corporation suspended under section 16–10–88.2 may engage in business activities allowed during winding-up and in business necessary to remedy the corporation's suspended status. However, a suspended corporation does not have authority to conduct business as usual.
>
> Todd and Jeff Crosland exceeded their suspended corporation's authority ... [and] are jointly and severally liable for the default judgment entered against [Crosland Industries]. . . .

886 P.2d at 84–85.

On certiorari, Todd Crosland raises two issues: (1) whether the court of appeals lacked jurisdiction to hear the Murphys' appeal because the trial court erroneously applied the "good cause" standard in granting the Murphys' rule 4(e) motion to extend the time for filing their notice of appeal, and (2) whether the court of appeals erred in interpreting the former Utah Business Corporation Act, Utah Code Ann. §§ 16–10–1 to –148,[1] to impose personal liability on corporate officers for corporate obligations incurred while the corporation is operating under suspended status.

■ Todd Crosland argues that the trial court applied the wrong standard under rule 4(e) of the Utah Rules of Appellate Procedure and thereby improperly granted the Murphys an extension of time in which to file their notice of appeal. Under rule 4(e), "[t]he trial court, upon a showing of *excusa-*

---

1. The Act was repealed in 1992 and replaced by §§ 16–10a–101 to –1705.

*ble neglect or good cause,* may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by paragraph (a) of this rule."[2] (Emphasis added.) Todd Crosland contends that this court should restrict the application of rule 4(e)'s "good cause" standard to motions made before the expiration of the initial thirty-day period allowed under rule 4(a). For all motions filed after the expiration of the initial thirty-day period, he argues that the trial court should employ only the "excusable neglect" standard. Consequently, since the Murphys filed their rule 4(e) motion after the initial thirty-day period, Todd Crosland argues that the trial court erred in granting their motion without a finding of "excusable neglect."

This court has not yet decided whether rule 4(e)'s "good cause" standard applies to motions filed after the initial thirty-day period. In deciding this issue, "we look to the express language of our rules ... and, to the extent that they are similarly worded, to the federal rules and cases interpreting them." *First Security Bank of Utah v. Conlin,* 817 P.2d 298, 299 (Utah 1991).

Rule 4(e) of the Utah Rules of Appellate Procedure is patterned after the 1979 amendment to rule 4(a)(5) of the Federal Rules of Appellate Procedure. There is a split of authority among the federal courts as to whether the "good cause" standard applies after the initial thirty-day period. A majority of courts have limited the application of this standard to the initial thirty-day period. This limitation is based in part on an advisory committee note to the 1979 amendment to rule 4(a)(5), which provides in pertinent part:

> The proposed amended rule expands to some extent the standard for the grant of an extension of time. The present rule requires a "showing of excusable neglect." While this was an appropriate standard in cases in which the motion is made after the time for filing the notice of appeal has run, and remains so, it has never fit exactly the situation in which the appellant seeks an extension before the expiration of the ini-

tial time. In such a case "good cause," which is the standard that is applied in the granting of other extensions of time under Rule 26(b) seems to be more appropriate.

Relying on the foregoing language, the Ninth Circuit Court of Appeals in *Oregon v. Champion International Corp.,* 680 F.2d 1300 (9th Cir.1982), held that a finding of "good cause" was insufficient to extend the time for filing the notice of appeal when the rule 4(a)(5) motion was filed after the initial thirty-day period:

> Although the Rule allows an extension of time upon a showing of excusable neglect or "good cause," the latter is applicable only where a motion is filed before the [expiration] of the thirty-day period. The good cause language was added to the Rule by a 1979 amendment because the excusable neglect standard "never fit exactly the situation in which the appellant seeks an extension before the expiration of the initial time."

*Id.* at 1301 (quoting Advisory Committee Notes to 1979 amendment to Fed.R.App.P. 4(a)(5)); *see also Pontarelli v. Stone,* 930 F.2d 104, 109 (1st Cir.1991) ("The advisory committee note has been relied upon by the seven regional courts of appeals which adhere to the view that the 'good cause' standard is applicable exclusively to FRAP 4(a)(5) motions made during the thirty-day period for taking an appeal as a matter of right under FRAP 4(a)(1).").

However, it appears to us that reliance upon the advisory committee note to interpret rule 4(a)(5)'s "good cause" standard is misplaced. Rule 4(a)(5), as formally adopted, is different from the draft rule to which the comment was addressed:

> The April, 1977 Preliminary Draft of the Proposed Rule 4(a)(5) clearly provided that an extension was available on a showing of good cause if the extension was sought during the original appeal time, but could be granted only on a showing of excusable neglect if the extension were sought later.... As actually adopted, Rule 4(a)(5) applies the excusable neglect or good cause

---

**2.** Rule 4(a) requires notice of appeal "within 30 days after the date of entry of the judgment or order appealed from." Utah R.App.P. 4(a).

standard to any motion that satisfies its time requirements. The Note of the Advisory Committee, however, was not changed to reflect this difference.

16 Charles A. Wright et al., *Federal Practice and Procedure* § 3950 (Supp.1995).

The First Circuit has adopted the better-reasoned position on this question. In *Scarpa v. Murphy*, 782 F.2d 300 (1st Cir.1986), the court rejected the majority position on federal rule 4(a)(5) and reversed the trial court's denial of the plaintiff's rule 4(a)(5) motion:

> We regard the *Oregon* court's statement that the phrase "good cause" is applicable only when the motion is filed before the time for filing the appeal has expired ... as an unwarranted maiming of the rule.... The rule expressly recognizes "good cause" as a basis for extension both before and after the expiration of the appeal time.

*Id.* at 301 (citation omitted).

Following the First Circuit's rationale, the Montana Supreme Court in *Northwest Truck & Trailer Sales, Inc. v. Dvorak*, 265 Mont. 327, 877 P.2d 31 (1994), found both "good cause" and "excusable neglect" where the defendants filed for an extension of their notice of appeal one day after the initial thirty-day period:

> Like the federal rule, the plain language of [the Montana rule] does not support [the plaintiff's] argument that we should adopt the reasoning of the majority of federal courts which require a separate standard before and after the expiration of the initial thirty-day time for filing an appeal. We therefore decline to adopt the rationale of those courts which restrict the application of the good cause standard. We em-

phasize that [the Montana rule] is clear on its face.

*Id.* at 33.[3]

Thus, the majority rule among the federal circuits relies on an outdated advisory committee note, and we decline to adopt it. The plain meaning of Utah's rule 4(e) is that "good cause" is not limited and is an appropriate ground for granting a rule 4(e) extension after the initial thirty-day period. Therefore, on the basis of its finding of "good cause," the trial court's grant of the Murphys' rule 4(e) motion was appropriate, and the Murphys' subsequent notice of appeal was timely.

■ We next address Todd Crosland's contention that the court of appeals erred in interpreting the former Business Corporation Act, specifically Utah Code Ann. §§ 16–10–88.2(1) and 16–10–139, to impose liability on corporate officers for corporate obligations incurred while the corporation was operating under suspended status. Under section 16–10–88.2(1) (1988), "[a] domestic corporation that remains delinquent for more than 30 days after the mailing of the notice of delinquency ... shall be suspended."[4] Furthermore, under section 16–10–139 (1987), "[a]ll persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof." Todd Crosland argues that section 16–10–139 applies only to de facto corporations and is not a basis for personal liability of officers or directors of a corporation which has been properly incorporated under state law.

We recently interpreted section 16–10–139 in *Steenblik v. Lichfield*, 906 P.2d 872 (Utah 1995), and therefore treat Crosland's argument summarily. In *Steenblik*, the defendant argued that the suspension of corporate authority terminated his personal liability as a director and an officer of the corporation.

---

**3.** In *Dvorak*, the court noted that defining "good cause" by a more liberal standard than "excusable neglect" was not inconsistent with its use after the initial thirty-day period. *Northwest Truck & Trailer Sales, Inc. v. Dvorak*, 877 P.2d 31, 34 (Mont.1994).

**4.** In sections 16–10a–1420 and –1421 of the Revised Business Corporation Act, all references to corporate suspension have been deleted. Section 16–10a–1420(2) allows the division to commence administrative dissolution if "the corporation does not deliver a corporate or annual report ... when it is due."

*Id.* at 875. Interpreting section 16–10–139, this court held that individuals are liable for corporate obligations incurred while the corporation is suspended:

> As to corporations that have been suspended and not reinstated, we hold that officers and directors who continue the business of a suspended corporation are personally liable for all debts and liabilities arising from those operations that are a continuation of the types of activities the corporation performed.... Thus, persons who act as if pursuant to valid corporate authority, after that authority has been suspended, are personally responsible for liabilities arising from the continued operations.... They are jointly and severally liable with others who know the corporation's authority is no longer effective but continue its operations.

*Id.* at 878 (citations omitted).

■ Todd Crosland, in his capacity as the president, director, and principal shareholder of Crosland Industries, authorized Jeff Crosland to execute guarantees on Swenson's behalf for the Murphys. Todd Crosland therefore continued to conduct business as usual while Crosland Industries' corporate status was suspended. Because Crosland Industries' corporate status was not subsequently reinstated, Todd Crosland is personally liable for the default judgment entered against the corporation. Inasmuch as the court of appeals' decision is consistent with *Steenblik*, we affirm.

ZIMMERMAN, C.J., STEWART, A.C.J., HOWE and LYON, JJ., concur in DURHAM's, J., opinion.

RUSSON, J., having disqualified himself, does not participate herein; MICHAEL D. LYON, District Judge, sat.