2000 UT 48

**Elizabeth REISBECK, Plaintiff and Appellant,**

v.

**HCA HEALTH SERVICES OF UTAH, INC., dba HCA St. Mark's Hospital, Defendant and Appellee.**

No. 981600.

Supreme Court of Utah.

May 26, 2000.

**448**

Wayne A. Freestone, Salt Lake City, for plaintiff.

David W. Slagle, Terence L. Rooney, Julianne P. Blanch, Salt Lake City, for defendant.

DURRANT, Justice:

¶ 1 Elizabeth Reisbeck appeals the district court's denial of her motion for extension of time to file her notice of appeal. In the underlying case, Reisbeck sued HCA Health Services for malpractice and the district court granted HCA's summary judgment motion. Reisbeck's attorney mailed a notice of appeal, which was filed by the clerk of the court four days after the thirty-day deadline.

The district court denied Reisbeck's subsequent motion for extension of time to file her appeal. We affirm.

## BACKGROUND

¶ 2 Reisbeck was injured when she fell from her hospital bed. She sued HCA Health Services, alleging medical malpractice. After conducting written discovery and depositions, HCA moved for summary judgment. The district court granted summary judgment on May 26, 1998. Thereafter, Reisbeck's attorney mailed a notice of appeal on Wednesday June 24. That notice was filed by the clerk of the Third District Court on Monday June 29, thirty-four calendar days after entry of judgment.

¶ 3 Upon discovering her notice of appeal had been filed beyond the thirty-day deadline imposed by rule 4(a)[1] of the Utah Rules of Appellate Procedure, Reisbeck moved, pursuant to paragraph (e) of the same rule, for an extension of time to appeal. In support of the motion for an extension, Reisbeck's attorney stated he had overlooked the fact that May contains thirty-one days, and had consequently calculated the deadline as falling on June 26th rather than June 25th. He also had assumed that any document would be received and filed not later than two days after being mailed.

¶ 4 The court denied Reisbeck's motion for extension of time. Reisbeck appeals that denial.

## DISCUSSION

¶ 5 Reisbeck concedes her notice of appeal was not filed within thirty days, as required by rule 4(a) of the Utah Rules of Appellate Procedure. Failure to file a timely notice of appeal deprives this court of jurisdiction over the appeal. *See Armstrong Rubber Co. v. Bastian*, 657 P.2d 1346, 1348 (Utah 1983); *Bowen v. Riverton City*, 656 P.2d 434, 436 (Utah 1982). Paragraph (e) of the same rule 4 nevertheless provides that

---

1. Rule 4(a), in pertinent part, provides as follows:
   *Appeal from final judgment and order.* In a case in which an appeal is permitted as a matter of right from the trial court to the appellate court, the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from.

[t]he trial court, upon a showing of excusable neglect or good cause, *may* extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by paragraph (a) of this rule.... No extension shall exceed 30 days past the prescribed time or 10 days from the date of entry of the order granting the motion, whichever occurs later.

Utah R.App. P. 4(e) (emphasis added).

¶ 6 The trial court's discretion to grant or deny a rule 4(e) motion is very broad. *See West v. Grand County,* 942 P.2d 337, 339–40 (Utah 1997). As we explained in *West:*

[T]he question of whether any given set of facts constitutes "excusable neglect" under appellate rule 4(e) is highly fact dependent. Moreover, the situations that might be presented to a trial court under this rubric are so varied and complex that "no rule adequately addressing the relevance of all these facts can be spelled out."

*Id.* (quoting *State v. Pena,* 869 P.2d 932, 939 (Utah 1994)).

¶ 7 Before the district court, Reisbeck argued that her attorney had "good cause" for failing to ensure the notice was timely filed, or alternatively, that her attorney's failure was due to "excusable neglect." Reisbeck asserted that the good cause criteria promulgated by rule 4(e) provide a distinctly more "liberal" standard than the excusable neglect criteria. The parties briefed and argued these issues, and the trial court denied Reisbeck's motion for an extension of time for the "reasons specified in the opposing memorandum."

¶ 8 On appeal, Reisbeck recapitulates the arguments she offered to the trial court and also asserts that the trial court failed to apply the proper legal standard. Specifically, she argues that this court's holding in *Murphy v. Crosland,* 915 P.2d 491, 494 (Utah 1996), required the trial court to apply a good cause standard instead of an excusable neglect standard. Because the precise basis for the trial court's order is unclear and because we deem it helpful to resolve ambiguity surrounding the correct application of good cause versus excusable neglect, we first address the argument relating to the scope of applicability of those standards.

¶ 9 *Murphy* primarily treated the issue of whether application of the excusable neglect standard or the good cause standard depends on the timing of the motion itself. *Murphy* acknowledged that the majority of federal courts treating the federal counterpart to Utah's rule 4(e) apply a more liberal good cause standard only to those circumstances where a party seeks an extension of time *before* the initial time period for filing a notice of appeal has expired. *See id.* at 493. Conversely, the majority rule treats cases under the rubric of excusable neglect where motions for extensions are brought *after* the initial time for filing a notice has already expired. *See id.*

¶ 10 Under the majority rule, excusable neglect and good cause are also subject to different analyses. Because application of the majority rule is governed by reference to the timing of the motion itself, it is not surprising that the pre-deadline good cause standard invokes a more liberal treatment than the post-deadline excusable neglect standard. Where a party anticipates a need for more time to prepare a notice of appeal and notifies the trial court of the desire to extend the time before the deadline, that party will usually be in a more sympathetic position than the party who misses the deadline and then belatedly attempts to resurrect the opportunity to appeal.[2]

¶ 11 *Murphy* concluded, however, that the majority rule—which relied heavily on an apparent misapplication of an advisory committee note to the Federal Rules of Appellate Procedure—was not well reasoned. *See id.* at 493–94. *Murphy* instead opted for a straightforward textual reading of rule 4(e) rather than a policy-based distinction

---

**2.** It is also not surprising that the term "good cause" appears more applicable to the situation where a motion is brought before the deadline, while "excusable neglect" relates more naturally to motions afterwards. If the motion is filed before expiration of the deadline, a party will usually be arguing there is a positive justification for extending the deadline, whereas, if the deadline has already expired, the party must ask the court to excuse the default.

grounded in the timing and nature of the motion filed. Since the rule plainly states that the motion may be granted for either excusable neglect *or* good cause, and because the rule does not draw any distinctions according to the timing of the motion, *Murphy* concluded that *both* excusable neglect and good cause could be invoked to support a motion for extension of time either before or after expiration of the initial deadline. *See id.* at 494.

¶ 12 Reisbeck argues the district court should have applied a distinctly more liberal good cause standard to her motion for extension of time to file notice. Reisbeck's argument misapprehends the consequences of our decision in *Murphy*. While it is true that our holding in that case allows trial courts to assess rule 4(e) motions for both excusable neglect and good cause regardless of the timing of the motion, this does not mean moving parties may simply label their rule 4(e) motions under the rubric they happen to prefer and then demand that the trial court analyze them accordingly. If we accepted Reisbeck's argument, we would effectively delete the term "excusable neglect" from rule 4 because all moving parties would naturally prefer the good cause standard for treatment of their motions to extend time. *See Pontarelli v. Stone,* 930 F.2d 104, 110 (1st Cir.1991).

¶ 13 *Murphy* instead necessitates a more nuanced and flexible approach to application of good cause versus excusable neglect. Because Utah courts may not rely on the simple expedient of the timing of the motion itself for determining the governing standard, the criteria must instead depend on the nature of the justification offered to support the motion. By this standard, it is apparent rule 4(e) permits a trial court to extend the time for filing a notice of appeal based on two general categories of justification: (1) excusable neglect, which is an *admittedly neglectful delay* that is nevertheless excused by special circumstances; or (2) good cause, which pertains to special circumstances that are *essentially beyond a party's*

control.[3] *See, e.g., Scarpa v. Murphy,* 782 F.2d 300, 301 (1st Cir.1986) (applying good cause standard in case of unusually long delay between mailing of notice and delivery by post office to clerk's office).

¶ 14 Under this approach, good cause remains a more liberal standard. To the extent a factor that contributed to, or provoked, a delay in filing was genuinely beyond the moving party's control, that factor will usually be more supportive of granting a motion to extend time than will a factor that is admittedly derived from the moving party's neglect. Nevertheless, because the assessment of the justifications offered by a moving party will remain highly fact-intensive, *see West,* 942 P.2d at 339–40, and because any given justification may entail aspects both within and beyond the moving party's control, it will often be difficult to label a particular justification as being either purely related to good cause or purely related to excusable neglect. Many circumstances legitimately may be treated under both rubrics. *But see Pontarelli,* 930 F.2d at 110–11 (holding two standards do not overlap).

¶ 15 In short, trial courts should treat each motion on its own merits, giving appropriate weight to the extent to which a particular justification relates to factors within or beyond the party's control. To the extent a particular justification implicates factors beyond the party's control, a more liberal good cause standard should be applied. Conversely, where a party or a party's attorney was concededly neglectful, the court must determine whether that neglect should, on balance, be excused. We reemphasize that the trial court's inquiry is fundamentally equitable in nature and entails broad discretion. Accordingly, we reaffirm *West's* refusal to establish any specific criteria for determining good cause or excusable neglect in the specific context of motions for extension of time to file notice of appeal. *See West,* 942 P.2d at 339–40.

¶ 16 Based on these principles and upon the deferential standard we apply in

---

3. In this light, the question of whether a motion is brought before or after the deadline simply becomes one relevant factor in the flexible and discretionary balancing analysis the trial court must undertake.

reviewing the trial court's grant or denial of a motion to extend time, we must affirm. In this case, Reisbeck's attorney offered two justifications for failing to meet the deadline for filing a notice of appeal. First, he miscalculated the calendar date for the deadline, and second, he assumed that the postal service and Third District Court's clerk's office would work in concert to file the notice within two business days of his sending it. The first factor simply constituted a mistake by Reisbeck's attorney. The second factor included elements beyond Reisbeck's attorney's control. Nevertheless, the timing of postal delivery and court clerk's office filings are not subject to absolute predictability. Regardless of past experience, a delay of three or four days between the mailing and filing of a court document should not have been wholly unexpected.[4] The gravity of this realization should have been augmented by recognition of the severe consequence of missing the deadline. Failure to timely file a notice of appeal bars jurisdiction in the appellate court. *See Armstrong Rubber Co.*, 657 P.2d at 1348; *Bowen*, 656 P.2d at 436. Moreover, Reisbeck's attorney has conceded there was nothing particularly difficult or onerous about preparation of the notice of appeal, nor were there any circumstances that would have prevented an earlier filing. Although it appears that the neglect in this case was not particularly egregious, the district court did not abuse its broad discretion in denying Reisbeck's motion for extension of time.

¶ 17 We affirm.

¶ 18 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice WILKINS concur in Justice DURRANT's opinion.

---

**4.** The fact that Reisbeck's attorney asserts that many prior documents were received and filed within two business days does not materially alter the analysis. The examples provided by Reisbeck all relate to documents allegedly mailed on a Thursday or Friday, which were apparently all filed on the following Monday (or in one case Tuesday, where the intervening Monday was a holiday). The rules provide that where deadlines calculated according to calendar days occur on a weekend or holiday, the filing date is deemed to fall on the first business day following the weekend or holiday. *See* Utah R.App. P. 22. In this case, the deadline fell on a Thursday and the notice was mailed on a Wednesday.