Justice LEE,
dissenting:
1483 The order on appeal is an order of certification under Utah Rule of Civil Procedure 54(b). That order complied with Utah Rule of Civil Procedure 7(F)(2) because it was a "proposed order submitted with an initial memorandum" in support of a motion for certification under rule 54(b). On that threshold point the majority apparently agrees. See supra 140 (conceding that the 54(b) certification order "may have" satisfied rule 7()(2)).
T 44 Yet despite its apparent concession on this narrow point, the majority dismisses the appeal on the basis of a purported problem of finality under rule 7(F)(2). It holds, specifically, that the proposed order submitted by the Corporation of the President and signed by the court went only to the matter of 54(b) certification, and did not encompass the summary judgment decision that preceded it. The majority's analysis, in other words, proceeds in two steps: (1) the order granting summary judgment did not itself comply with rule 7(F(2); and (2) the subsequent 54(b) order was itself final under rule 7({)(2), but not in a manner encompassing-or curing the lack of finality regarding-the prior summary judgment decision. Supra 1 40.
145 I respectfully dissent. The court's analysis purports to be rooted in the terms of rule 7(@). But although there may be a plausible basis in the abstract terms of the rule for the majority's approach, the rule also leaves ample room for a contrary construction. And because that contrary approach is more consistent with the longstanding doctrine of merger of judgments and with the policy and purpose of both rule 7(F)(2) and 54(b), I would interpret the rule to sustain the finality and appealability of the order in question. And in so doing I would reject what appears to me to be an unduly restrictive construction of rule 7(F)(@2) that will yield troubling results in future cases.
146 The operative terms of rule 7(F)(Z2) accord finality to a "proposed order submitted with an initial memorandum." UrtaK R. Civ. P. 7TFM@). In this case, the relevant order was the proposed order that the church submitted with its opening memorandum in connection with its motion for certification under Utah Rule of Civil Procedure 54(b). And the memorandum submitted in support of that order was accordingly an "initial memorandum" for purposes of rule That conclusion seems to me to follow from the very nature and function of a 54(b) order, which is to bundle a package of separate motions together to create one merged and appealable package subject to an appeal of right. With that in mind, the court's signature on the proposed 54(b) order should be deemed to fulfill the finality requirements of rule that order was then complete for rule 7(F)(2) purposes and thereafter subject to appeal.
€47 The key question is the scope of the court's final decision on its 54(b) order. Again, the majority appears to concede this much, acknowledging, at least, that an appeal as to the propriety of "the district court's ruling on the motion for rule 54(b) certification" was appropriate. Supra 140, n. 10. But the court proceeds to conclude that the scope of the 54(b) certification is somehow limited by the terms of rule 7()(2)-that the issues encompassed in the "initial memorandum" are limited to the issues specifically addressed by the motion attached to that memorandum, and do not encompass issues *292 resolved on prior motions leading up to it.[1] And since the proposed order was filed with the 54(b) memorandum, and not the prior summary judgment memorandum, the majority concludes that the summary judgment decision is not final and thus not before us on appeal. Supra " 40.
T 48 This strikes me as an unduly wooden application of the terms of rule 7(F)(2). In the context of a 54(b) motion, I would read rule 7(F)(2) to encompass the natural, ordinary understanding of a proposed order and initial encompass the 5h(b) certification order and the memorandum in support of the motion for certification, whose obvious purpose is to render appealable all prior interlocutory orders relevant to the 54(b) certification.[2] And in this context, I would interpret the certification order that is before us on appeal-an order proposed by the Corporation of the President and signed by the district court-to encompass the underlying summary judgment order as a matter certified as final and appeal-able. That is the whole point of a 54(b) motion for certification, after all. To read rule 7(F)(2) to require the proposed order to be attached to the very first initial memorandum in the motion for summary judgment briefing-or risk excluding that decision from the ultimate certification for appeal-is to ignore the obvious point of certification under rule 54(b).
4 49 The court's construction of rule 7(FM)(2) also flies in the face of the longstanding doctrine of merger of judgments. This is an important doctrine of judicial economy and convenience. It forecloses the need for separate appeals from individual orders by establishing an administrative principle of merger-that interlocutory decisions merge into final, appealable ones. See supra ¶ 24, n. 6 (citing 10 James Wm. Moors, Moor®'$ At PracticE § 54.25(5] (8d ed.2014) (noting that under merger doctrine an interlocutory order "merges into the final judgment that disposes of all the claims and parties and becomes appealable at that time"); Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 430, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) (noting that merger avoids "having litigation punctuated by piecemeal appellate review of trial court decisions which do not terminate the litigation." (internal quotation marks omitted)). The final judgment rule and the principle of merger apply with equal force where the appealable judgment is a 54(b) certification; "[aln appeal from a judgment made final under Rule 54(b) opens up the record [and permits review of all rulings that led up to the judgment] as to the parties involved in the appeal in the same way as an appeal from a final judgment that disposes of the entire action." 15A Crarurs Auan Wricut & Artur R. Minusr, FrpmraL PRACTICE & ProcepurE § 8905.1, n. 22 (2d ed. Supp 2014) (citing Bowdry v. United Airlines, Inc., 58 F.3d 1483, 1488-89 & n. 11 (10th Cir. 1995). Thus, a 54(b) certification reaches back to all prior interlocutory orders encompassed by the certification. In so doing it bundles those orders together and makes them subject to a final appeal of right. A 54(b) certification that satisfies rule 7(M(@) accordingly renders those same separate orders appealable for 7(F)(2) purposes as well.
T 50 The majority challenges this construction of 7(F)(2) on the ground that the "initial memorandum" option for complying with *293 7M(2) is time-limited-that under Central Utah Water this option must be satisfied at the time the underlying ruling is made, or not at all. See supra ¶ 17 (citing Cent. Utah Water Conservancy Dist. v. King, 2013 UT 13, ¶ 26, 297 P.3d 619 ("[I)f neither of the two exceptions to the default rule is present, the prevailing party has fifteen days in which to submit a proposed order.")). This contention is based on the notion that service by the prevailing party is the "default" way of complying with 7(£)(2) if the underlying order has no initial memorandum or explicit mention of finality, and the prevailing party is thereafter obligated to submit a 7F)(@2) order within fifteen days of the court's ruling. Utan R. Civ. P.
{51 Again this strikes me as an unduly wooden construction of the rule. We have expressly held that the order to be filed by the prevailing party is not the end of the road under rule 7(F)(2); there must be a safety valve in the event the prevailing party fails to serve the order. Otherwise, the "appeal rights of the nonprevailing party [would] extend indefinitely." Cent. Utah Water, 2013 UT 13, ¶ 26, 297 P.3d 619 (emphasis omitted) (internal quotation marks omitted). We have crafted one such safety valve already, holding that if the prevailing party fails to serve the 7F)(@2) order within the required time, "any party interested in finality-generally, the nonprevailing party-may submit an order." Code v. Utah Dep't of Health, 2007 UT 43, ¶ 7, 162 P.3d 1097; supra ¶ 17. I see no reason to conclude that an initial memorandum submitted with a request for a 54(b) certification could not also operate as such a safety valve-establishing 7()(@) finality where it was not fulfilled at the time of the underlying order and no subsequent order has been filed by the parties. And because of 54(b)'s inherent purpose in bundling orders into one merged package, it seems to me a natural point at which to cure a 7(f)(2) deficiency for all orders within the 54(b) package.
152 The court's contrary decision undermines the doctrine of merger by establishing limitations not required by the text of rule 7F)(@). And in so doing it introduces substantial uncertainty into the appellate process-and potential land mines for both appellants and appellees.
T53. For appellants, the uncertainty will concern the seope of a final order of certification. An appellant who secures a rule TF)(@)compliant order of certification would logically presume that such order preserves the right to appeal any interlocutory order leading up to it. But under today's decision that will not necessarily be the case. If the appellant has failed to secure compliance with rule 7(£)(2) for each and every interlocutory order encompassed by the rule 54(b) certification order, the 54(b) appeal will fail to deliver on its promise [3]-and the appellant will be foreclosed from challenging individual interlocutory decisions in the 54(b) appeal.
1 54 This also implicates a parallel problem for appellees. After a final 54(b) certification order is entered and the time for appeal has passed, the prevailing party will logically conclude that the 54(b) judgment is safe from appellate attack. Yet under the majority's approach that will not be true in some cases. After today's decision, a party holding an unappealable 54(b) judgment may nonetheless be subject to a subsequent appeal on any underlying interlocutory orders that were not rendered individually compliant with rule The majority, in fact, expressly acknowledges this possibility. See supra ¶ 39.
*294 155 These are problematic traps for unwary litigants. And these traps will also undermine the important goals of finality and judicial economy. We should avoid these problems if at all possible. I would do so by reading rule 7(F)(2) in a manner incorporating the doctrine of merger and informed by the nature of a 54(b) certification, as explained above.
T56 For these reasons I dissent from the majority's dismissal of the appeal on jurisdictional grounds. And on the merits, I would affirm the denial of Butler's motion for extension of time to appeal under Utah Rules of Appellate Procedure 4(e).
157 Butler offered three grounds for excusing her neglect in not filing a timely notice of appeal: (1) her counsel's e-filing service failed to indicate that a Rule 54(b) order had been entered; (2) opposing counsel failed to mail a copy of the Rule 54(b) order; and (3) her counsel misunderstood the; law of finality as it affected the appealability of the order. The district court rejected the latter two grounds as legally deficient, and understandably so. See Serrato v. Utah Transit Auth., 2000 UT App 299, ¶ 9, 13 P.3d 616 ("[Ilnadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect." " (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs., 507 U.S. 380, 392, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993))); Urax R. Civ. P. 58A(d) ("[Thhe time for filing a notice of appeal is not affected by this [service] requirement."). And as to the former, the court credited evidence that the failure of the e-filing service was not in the service itself but in counsel's own inexcusable neglect-in "failing] to refresh the page on the service provider's webpage, which step, if taken, would have provided a current version of the docket."
58 The district court's denial of Butler's motion is reviewed under the deferential "abuse of discretion" standard of review. See Reisbeck v. HCA Health Servs. of Utah, Inc., 2000 UT 48, ¶ 6, 2 P.3d 447. I would affirm under that standard, recognizing the district court's firsthand familiarity with the evidence and the parties and its "broad" discretion to resolve fact-intensive matters such as the determination of "excusable ne-gleet." Id. Among other things, it should be noted that Butler's counsel admitted to having seen a January 3 minute entry suggesting that an order had been entered. In light of that undisputed fact, the district court was well within its broad discretion in concluding that Butler's failure to file a timely notice was not excusable, but instead a result of counsel's negligence. I would defer to that judgment, and I would affirm.

. The majority agrees that at least in some circumstances, a 54(b) order "satisfies rule 7(F)(2) for all prior interlocutory rulings that merge into it." Supra 139. But it appears to limit the application of the doctrine of merger to circumstances method of 7(F)(2) compliance is service of an order by the prevailing party. I see no legal or logical basis for this limitation, or for not extending the principle of merger to the method of 7($)(2) compliance at issue here of attachment of an order to an initial memorandum. For reasons explained below, I see no basis in 7(F)(2) for privileging one method of compliance over another.

. This is not to say that ary other initial memorandum filed in the trial court would make the summary judgment order 7(f)(2)-compliant. See supra 133 (suggesting that my position "would have us read rule 7()(2)'s reference to 'an initial memorandum' to encompass later memoranda relating to motions other than the underlying motion to which the order applies"). I would agree that an attached memorandum generally renders 7(F)(2)-compliant only the order it leads up to. But a 54(b) order is different. For reasons explained below, a final 54(b) order-as informed by the doctrine of merger-cures any lack of finality in any pre-existing interlocutory orders. where the

. The majority demurs on this point, asserting that "the ultimate rule 7({)(2) order that is properly certified as final under rule 54(b) satisfies rule 7({)(2) for all prior interlocutory rulings that merge into it." Supra % 39 (emphasis added). But the italicized basis for the court's response underscores the conflict between my approach and that of the majority. Specifically, the court does not conclude that "all prior interlocutory rulings" merge into a 7(F)(2)-compliant 54(b) order. (If it did, I would have no objection; that is my position.) Instead the court's holding is that only those "prior interlocutory rulings" that themselves satisfied rule 7()(2) "at the time the district court grants rule 54(b) certification" are merged into the 54(b) order. Supra % 39 (emphasis added). Therein lies the problem as I see it. For reasons explained herein, I would not require independent compliance with rule for each interlocutory order leading up to a 54(b) certification. I would instead deem the final 54(b) order to cure any problems by operation of the doctrine of merger.