# In the Iowa Supreme Court

No. 23–2113

Submitted October 7, 2025—Filed March 20, 2026

**Jenna Sondag,**

Appellant,

vs.

**Orthopaedic Specialists, P.C.,** and **John Hoffman,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, Stuart P. Werling, judge.

A plaintiff appeals the dismissal of her medical malpractice suit due to her failure to timely designate an expert witness. **Decision of Court of Appeals Vacated, District Court Judgment Reversed and Case Remanded.**

Christensen, C.J., delivered the opinion of the court, in which all participating justices joined. McDonald, J., filed a concurring opinion. Waterman, J., took no part in the consideration or decision of the case.

Roxanne Conlin and Devin Kelly of Roxanne Conlin & Associates, P.C., Des Moines, for appellant.

Ian J. Russell and Alexander C. Barnett of Lane & Waterman LLP, Davenport, for appellees.

**Christensen, Chief Justice.**

This appeal arises from a medical malpractice action filed by Sondag[1] on January 7, 2019. Approximately eight months later, the defendants filed a motion for summary judgment alleging Sondag failed to timely designate an expert. One month later, Sondag filed a motion for extension of time within which to name expert witnesses. The district court held a hearing on the parties' motions, and an order was entered finding good cause existed to sustain Sondag's motion for extension of time and denying the defendants' motion for summary judgment. Hoffman did not apply for interlocutory appeal.

Nearly four years later, and only four days before trial, the district court held a hearing before the same judge on the parties' motions in limine. When the court asked the defendants whether paragraph seventeen of their motion in limine was essentially a renewal of their 2019 motion for summary judgment, the defendants agreed. The court overturned its 2019 finding of good cause to extend Sondag's deadline and dismissed the action for failure to timely certify an expert witness. Sondag appealed, and the court of appeals upheld the district court's dismissal. After further review, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand the case for trial.

**I. Background Facts and Proceedings.**

Dr. John Hoffman of Orthopaedic Specialists, P.C., performed Jenna Sondag's hip surgery on February 13, 2017. After filing suit on January 7, 2019, Sondag stipulated to a discovery plan that required her to designate expert witnesses by the "deadline set forth in [section] 668.11." This set Sondag's expert witness designation deadline for July 24, 2019. Sondag's counsel later argued

---

[1]Plaintiffs Jenna Sondag, Timothy Sondag, and minors C.S. and B.S. are referred to collectively as "Sondag" for simplicity.

that she failed to properly calendar the date because the law firm's docketing software "incorrectly calendared the expert deadlines in this case to the typical deadlines of other civil-tort based claims."

During April through July of 2019, Sondag's counsel was preparing for and participating in a six-week-long trial in a different case. *See Godfrey v. State*, 847 N.W.2d 578 (Iowa 2014); *Godfrey v. State*, 962 N.W.2d 84 (Iowa 2021). That trial was further complicated by medical concerns that required the hospitalization of one of Sondag's attorneys. After being hospitalized for a day and taking a week to recover, the attorney returned to court to finish out the remainder of the trial, which was completed on July 15.

On October 7, the defendants filed a motion for summary judgment due to Sondag's failure to timely serve her expert certifications and disclosures. Sondag resisted the summary judgment motion and moved for an extension of time to certify and disclose expert witnesses. After hearing argument on the competing motions, the court granted Sondag's request for additional time and extended the deadline. The court determined that the good cause requirement in Iowa Code section 668.11(2) (2019) had been satisfied due to the explanations outlined by Sondag's attorney (busy trial schedule, medical complications, and docketing software errors).

On October 26, 2023, four days before trial was to commence and nearly four years after the court denied the defendants' motion for summary judgment, the court reconsidered its 2019 order when the defendants filed a motion in limine to decertify Sondag's expert witness. After considering unpublished caselaw from the court of appeals and hearing argument by counsel, the court reversed its prior ruling and decertified Sondag's expert, indicating that it was "required" to grant the motion. Unlike the 2019 detailed seven-page order finding

good cause, the 2023 order was short and sweet, referring to "the reasons set forth on the record" as justifying the dismissal.

Sondag appealed, and we transferred the case to the court of appeals. The court of appeals affirmed, and we granted Sondag's application for further review.

## II. Analysis.

Upon further review, we hold that (1) the district court had authority to correct an erroneous ruling any time prior to final judgment, (2) the district court's 2019 order was not an abuse of discretion, and (3) the district court's 2023 ruling was an abuse of discretion. Accordingly, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand the case for trial.

**A. The District Court Had Authority to Correct an Erroneous Ruling Prior to Final Judgment.** While Sondag may be correct that the motion to disqualify her expert witness amounted to an untimely motion for summary judgment, the district court generally has the authority to correct an erroneous ruling at any time prior to final judgment. *Kendall/Hunt Publ'g Co. v. Rowe*, 424 N.W.2d 235, 240 (Iowa 1988). A judge is not typically bound by a prior ruling that the judge later comes to believe is erroneous, and to say otherwise would result in absurd outcomes. We see no reason this rule should not hold true for Sondag. The correction of an erroneous ruling prior to final judgment is in the interests of our judicial system, and how an erroneous ruling is called to the attention of the court is ultimately immaterial.

**B. The District Court's 2019 Order.** With respect to the district court's 2019 order, we conclude the district court did not abuse its discretion in finding good cause existed to sustain Sondag's motion for extension of time to disclose an expert witness and denying the defendants' motion for summary judgment.

Iowa Code section 668.11(2) requires that "[i]f a party fails to disclose an expert pursuant to subsection 1 or does not make the expert available for discovery, the expert shall be prohibited from testifying in the action unless leave for the expert's testimony is given by the court for good cause shown." Here, the critical issue is whether the district court abused its discretion when it ruled that Sondag had good cause for her failure to timely disclose an expert in 2019.

In 2019, the district court issued a detailed, well-reasoned decision determining Sondag had good cause for missing the July 2019 discovery deadline and sustained her motion for an extension of time. Upon review, we determine that no abuse of discretion occurred in this ruling.

Good cause, within the meaning of section 668.11(2), requires Sondag to demonstrate that there was a

> sound, effective, truthful reason, something more than an excuse, a plea, apology, extenuation, or some justification for the resulting effect. The [plaintiff] must show that [her] failure [to designate an expert] was not due to [her] negligence or want of ordinary care or attention, or to [her] carelessness or inattention. [She] must show affirmatively [she] did intend to [designate an expert] but because of some misunderstanding, accident, mistake or excusable neglect failed to do so.

*Donovan v. State*, 445 N.W.2d 763, 766 (Iowa 1989) (quoting *Dealers Warehouse Co. v. Wahl & Assocs.*, 216 N.W.2d 391, 394–95 (Iowa 1974)). Sondag bears "the burden to demonstrate good cause for [her] delayed certification." *Wilson v. Shenandoah Med. Ctr.*, 21 N.W.3d 398, 405 (Iowa 2025).

When a district court's good cause determination is reviewed on appeal, the standard applied is abuse of discretion. *Id.* at 404. The district court acknowledged this deferential standard of review in its 2023 oral ruling, citing *Stanton v. Knoxville Community Hospital, Inc. See* No. 19–1277, 2020 WL 4498884, at *2 (Iowa Ct. App. Aug. 5, 2020) ("The district court 'has broad

discretion in ruling on such matters, and the exercise of that discretion will ordinarily not be disturbed unless it was exercised on clearly untenable grounds or to an extent clearly unreasonable.' " (quoting *Hantsbarger v. Coffin*, 501 N.W.2d 501, 505 (Iowa 1993) (en banc))); *see also Reyes v. Smith*, No. 21–0303, 2022 WL 1656238, at *1 (Iowa Ct. App. May 25, 2022) ("[T]he exercise of that discretion will not be disturbed unless it was exercised on clearly untenable grounds or to an extent clearly unreasonable." (quoting *Hill v. McCartney*, 590 N.W.2d 52, 54–55 (Iowa Ct. App. 1998))).

There are four factors the district court should consider in making its good cause determination. *Wilson*, 21 N.W.3d at 406. The factors set out in *Wilson v. Shenandoah Medical Center* are:

> First, we consider "the seriousness of the deviation." Second, we consider the "defendant's prejudice or lack thereof." Third, we consider "the actions of the defense counsel" but "emphasize[] that defense counsel are not their 'brother's keeper.' " Finally, we may also consider "diligence by the plaintiffs in pursuing their case."

*Id.* at 406 (alteration in original) (citations omitted) (first quoting *Hantsbarger*, 501 N.W.2d at 505; and then quoting *Kirlin v. Monaster*, 19 N.W.3d 108, 117–118 (Iowa 2025)). The court's 2023 order was silent on any of these factors.

Sondag was required to designate expert witnesses by July 24, did not ask for an extension until October 7, and did not designate her witness until December 12. The court of appeals determined that this 141-day delay was a serious deviation. We agree. In *Wilson*, we determined that delays of several months are serious deviations, and we highlighted this as a particularly strong factor against finding good cause because the plaintiff had offered "no valid reason for [the] delay." *Id.* at 406.

However, Sondag presented a "sound, effective, truthful reason" for the delay. *Donovan*, 445 N.W.2d at 766 (quoting *Dealers Warehouse Co.*, 216 N.W.2d

at 394). She presented several reasons for the delay: her counsel was involved in a complex multiweek trial that occurred during the discovery period, hospitalization of one of the two lead attorneys during that extensive trial, and an error in the docketing software that improperly calculated the discovery deadline. It is reasonable to find that this combination of factors constitutes "excusable neglect" within the meaning of *Donovan v. State. Id.* (quoting *Dealers Warehouse Co.*, 216 N.W.2d at 395).

For the second factor, we consider the defendants' prejudice or lack thereof. In a typical situation, some prejudice "*might* be presumed to occur when experts are not designated by the statutory deadline." *Nedved v. Welch*, 585 N.W.2d 238, 241 (Iowa 1998) (per curiam) (emphasis added). *But see Kirlin*, 19 N.W.3d at 117 (" 'Presumed prejudice' is not the same as real prejudice."). In its 2019 order, the district court noted that prejudice was minimal, highlighting the fact that discovery in the case would be ongoing until July of 2020. With the added benefit of hindsight, we can confirm no prejudice resulted from granting Sondag's motion to extend the expert designation deadline.

In considering the third factor, there is no indication that the actions of defense counsel justify the deviation from the discovery schedule. In its 2019 order, the district court had this to say regarding the third factor:

> While it is true Defendants' Counsel never attempted to specifically warn Plaintiffs' Counsel of the approaching deadlines, the Defendants did send discovery requests requesting expert disclosures. This third factor holds no bearing in one way or the other for the Court's determination that the Plaintiffs have demonstrated good cause for an extension.

We agree with the district court's analysis on this factor.

Applying the final factor, Sondag diligently pursued her case. Her counsel's mistake in relying upon docketing software to properly calendar an important deadline does not speak to Sondag's diligence. In fact, Sondag's counsel

specifically purchased docketing software to avoid the very predicament that they find themselves in now, and we cannot hold it against them that it failed in its essential purpose.

In 2019, Sondag provided a reasonable excuse for missing the deadline, and there was no resulting prejudice to the defense. While the seriousness of the deviation does weigh against Sondag, that is only one factor in our four-factor test. Proper weighing of the factors reveals that the district court's 2019 order was not an abuse of discretion.

**C. The District Court's 2023 Order.** With respect to the district court's 2023 order, we conclude that the district court abused its discretion in excluding Sondag's expert's testimony and then dismissing the case. That conclusion depends in large part on the posture of the case.

In similar circumstances where interpretation of this Code section has been at issue, we identified the importance of the deadlines set forth in section 668.11(1) "to provid[ing] certainty about the identity of experts" in a timely manner. *Hantsbarger*, 501 N.W.2d at 504. Here, section 668.11(1) was the basis for a dismissal of a professional liability suit where the identity of the experts was timely certified, the expert was available to testify at trial, and there had been a prior determination that the plaintiffs had good cause for an extension under section 668.11(2).

Iowa Code section 668.11(1)(*a*) requires a medical malpractice plaintiff to "certify to the court and all other parties the expert's name, qualifications and the purpose for calling the expert within . . . one hundred eighty days of the defendant's answer unless the court for good cause not ex parte extends the time of disclosure." There is no provision in section 668.11 that allows for the exclusion of an expert where the expert was timely designated in accordance with the discovery schedule, regardless of whether the schedule has been revised.

In 2019, when the district court extended the expert designation deadline upon a finding of good cause, the original deadline ceased to exist. The parties were entitled to rely on the new deadline and to conduct discovery and trial preparation in conformity with it. By the time the district court decided to revisit that order four years later, the revised discovery schedule—with which the parties complied—was in the rearview mirror. The case was ripe to be decided on its merits, and both parties were ready for the trial set to begin just four days later. Treating the earlier deadline as controlling years later—and excluding the expert on that basis—was an abuse of discretion.

**III. Conclusion and Disposition.**

The district court's 2023 order abused its discretion by disregarding a prior order extending the expert designation deadline and excluding Sondag's expert testimony. We vacate the court of appeals decision, reverse the judgment of the district court, and remand the case for trial.

**Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded.**

All justices concur except Waterman, J., who takes no part. McDonald, J., files a concurring opinion.

**McDonald, Justice (concurring).**

What constitutes "good cause" within the meaning of Iowa Code section 668.11 (2019)? Since the statute was enacted in 1986, *see* 1986 Iowa Acts ch. 1211, § 40, our appellate courts have revisited the issue without much success. Despite, or perhaps because of, thirty-nine years of judicial accretions to the statute, what constitutes "good cause" within the meaning of section 668.11 remains obscured. It is true that district courts have discretion to determine what constitutes good cause, but that discretion is a legal discretion to be exercised in accord with the relevant law. In my view, our layers of precedents have not provided sufficient guidance in this area to channel the exercise of that legal discretion. I write separately in an attempt to provide greater clarity in what, to me at least, has become an increasingly directionless and contradictory area of law. *See, e.g., Wilson v. Shenandoah Med. Ctr.*, 21 N.W.3d 398, 408–09 (Iowa 2025) (holding the district court abused its discretion in not excluding the testimony of a witness disclosed three months after the deadline but almost two years prior to the scheduled trial date).

I begin my analysis of the issue with the text of the statute. *See Cnty. Bank v. Shalla*, 20 N.W.3d 812, 818 (Iowa 2025) (stating any interpretive inquiry begins with the text of the statute). The statute has remained unchanged since enacted in 1986, and it provides:

> 1. A party in a professional liability case brought against a licensed professional pursuant to this chapter who intends to call an expert witness of their own selection, shall certify to the court and all other parties the expert's name, qualifications and the purpose for calling the expert within the following time period:
>
> *a.* The plaintiff within one hundred eighty days of the defendant's answer unless the court for good cause not ex parte extends the time of disclosure.

*b.* The defendant within ninety days of plaintiff's certification.

2. If a party fails to disclose an expert pursuant to subsection 1 or does not make the expert available for discovery, the expert shall be prohibited from testifying in the action unless leave for the expert's testimony is given by the court for good cause shown.

Iowa Code § 668.11(1)–(2).

The statute uses the term "good cause" in two different contexts. First, the statute requires a plaintiff to timely and properly designate an expert witness "within one hundred eighty days of the defendant's answer unless the court for good cause not ex parte extends the time of disclosure." *Id.* § 668.11(1)(*a*). Second, if the plaintiff fails to timely and properly designate an expert witness, then "the expert shall be prohibited from testifying in the action unless leave for the expert's testimony is given by the court for good cause shown." *Id.* § 668.11(2).

These are separate and distinct contexts, serving distinct statutory purposes. *See Hantsbarger v. Coffin*, 501 N.W.2d 501, 505 (Iowa 1993) (en banc) ("Plaintiffs did not request an extension of time for disclosure under subsection (1); rather, they sought to excuse noncompliance for good cause under section 668.11(2)."). In the first context, "good cause" relates to reasons to extend the discovery deadline to designate an expert witness. In the second context, "good cause" relates to reasons to allow the testimony of an expert witness despite the party's failure to timely and properly designate an expert.

The statute does not define "good cause" within either of these distinct contexts. Our cases provide that "good cause" is a

sound, effective, truthful reason, something more than an excuse, a plea, apology, extenuation, or some justification for the resulting effect. The movant must show his failure . . . was not due to his negligence or want of ordinary care or attention, or to his carelessness or inattention. He must show affirmatively he did intend to defend and took steps to do so, but because of some

>  misunderstanding, accident, mistake or excusable neglect failed to
>  do so.

*Wilson*, 21 N.W.3d at 405 (omission in original) (quoting *Donovan v. State*, 445 N.W.2d 763, 766 (Iowa 1989)). In addition to this standard, our cases also instruct that good cause (at least as applied to plaintiffs) involves an assessment of multiple factors, including the plaintiff's diligence in pursuing the case, the seriousness of the deviation, the defendant's prejudice or lack thereof, and the actions of defense counsel. *See id.* at 406.

Three things stand out regarding these standards and factors. First, the standards are in serious tension, if not outright conflict, with each other. For example, to establish good cause, the movant must show her failure was not due to negligence or want of ordinary care but instead was due to a misunderstanding, accident, or mistake. *Id.* at 405. Misunderstandings, accidents, and mistakes seem like prototypical examples of negligence and want of ordinary care rather than something different than negligence and want of ordinary care. Second, the standards and factors fail to provide much meaningful guidance to courts. Third, and related, the standards and factors fail to account for the specific legal contexts in which courts must make a finding of good cause.

This third item is critically important. Generally, good cause means a "legally sufficient reason." *State v. Damme*, 944 N.W.2d 98, 100 (Iowa 2020). However, what constitutes a legally sufficient reason "is context-specific." *Id.* at 104. For example, what constitutes good cause to pursue an appeal as a matter of right following a guilty plea is different than what constitutes good cause to unseal an adoption record or extend time for service of process. *Compare id.* at 105, *with In re Adoption of S.J.D.*, 641 N.W.2d 794, 800 (Iowa 2002), *and Meier v. Senecaut*, 641 N.W.2d 532, 543 (Iowa 2002). Likewise, because section 668.11

requires a finding of good cause in two separate contexts, what constitutes good cause in each context may be distinct.

The statute first gives courts the authority to extend the discovery deadline to designate an expert witness "for good cause." Iowa Code § 668.11(1)(*a*). The statutory discovery deadline must be read in conjunction with the rules of civil procedure. *See, e.g., Mercer v. Andersen,* 715 N.W.2d 114, 123 (Minn. Ct. App. 2006) (stating the statutory discovery deadline must be read in conjunction with the rules of civil procedure). Under the rules of civil procedure, pre-deadline and post-deadline motions for extensions of time are treated differently. *See* Iowa R. Civ. P. 1.443(1); *Hanick v. Ferrara,* 161 N.E.3d 1, 12 (Ohio Ct. App. 2020) (applying different standards to pre- and post-deadline motions). If a motion for an extension of time is made prior to the discovery deadline, any legitimate reason should constitute good cause to extend the deadline so long as the extension of time is reasonable. *See* Iowa R. Civ. P. 1.443(1)(*a*). If the motion is made after the discovery deadline, then good cause to extend the deadline should be found only when the failure to timely designate an expert witness "was the result of excusable neglect." *Id.* r. 1.443(1)(*b*).

"Excusable neglect," as used here, "pertains to special circumstances that are essentially beyond a party's control." *Freight Tec Mgmt. Grp. Inc. v. Chemex Inc.,* 499 P.3d 894, 903 (Utah Ct. App. 2021) (quoting *Reisbeck v. HCA Health Servs. of Utah, Inc.,* 2 P.3d 447, 450 (Utah 2000)). "It 'comes into play in situations in which there is no fault—excusable or otherwise.'" *Id.* at 903–04 (quoting *Utah Republican Party v. Herbert,* 678 F. App'x 697, 700 (10th Cir. 2017)); *see also Santos v. D. Laikos, Inc.,* 139 A.3d 394, 399 (R.I. 2016) ("[F]or a party to establish excusable neglect, the party generally must show that the circumstances that caused the party to miss a deadline were out of that party or counsel's control." (quoting *Boranian v. Richer,* 983 A.2d 834, 840 (R.I. 2009)));

*Rodriguez v. State*, 435 P.3d 399, 411 (Wyo. 2019) (explaining that good cause connotes an event or circumstance that is outside the party's control). When a party shows the failure to comply with the discovery deadline was due to excusable neglect (for example, the party's attorney was hospitalized for an extended period of time), the prejudice caused to the defendant is largely immaterial to the determination of good cause. There is no reason to prevent a party from obtaining an extension of time after the fact when the failure to move for an extension of time prior to the deadline was due to circumstances beyond the party's control.

In the second context, the statute gives courts leave, upon good cause shown, to allow a party's expert witness to testify despite the party's failure to timely and properly designate the witness. Iowa Code § 668.11(2) ("If a party fails to disclose an expert pursuant to subsection 1 or does not make the expert available for discovery, the expert shall be prohibited from testifying in the action unless leave for the expert's testimony is given by the court for good cause shown.").

There are two situations where the decision to grant or deny such leave seems relatively clear. First, if a party shows that the failure to timely and properly designate an expert witness was due to excusable neglect, as defined above, then the party has established good cause to allow the party's expert witness to testify. As with section 668.11(1)(*a*), there is no reason to preclude a party's witness from testifying—even if there was prejudice to the opposing party—where the party's failure to timely and properly designate an expert was due to circumstances beyond the party's control. Second, if the record reflects that the party's failure to comply with the discovery deadline was something more than negligence or want of ordinary care, i.e., the party acted in bad faith or was otherwise engaged in discovery gamesmanship, then the party cannot

make a showing of good cause. This is true even where the opposing party suffered no prejudice. Equitable considerations prevent courts from granting relief to a party not acting in good faith.

The most difficult situation to resolve is what constitutes good cause for leave to allow the testimony of a late-disclosed expert witness when the party's failure to comply with the discovery deadline was due to the party's negligence. In this circumstance, courts are faced with two competing interests: the effective enforcement of a disclosure and discovery deadline versus the general preference for resolving cases on the merits. Between these competing interests, courts should err on the side of allowing the testimony. It must be remembered that section 668.11 is a discovery statute and that courts should be reluctant "to dispose of cases for failure to abide by the rules of discovery. Rather, our objective is to dispose of cases on the merits." *Hantsbarger*, 501 N.W.2d at 504. The statute imposes an expert witness designation deadline "to provide certainty about the identity of experts and prevent last minute dismissals when an expert cannot be found." *Id.* The statute is to be "liberally interpreted to accomplish its purpose." *Id.* Only "substantial compliance" is required. *Id.* Thus, if a party shows that the late disclosure did not prejudice the opposing party's ability to obtain discovery and timely prepare its prosecution or defense of the case on the merits, then courts should grant leave to allow the testimony despite the party's want of ordinary care. *See id.* at 506 (concluding that the district court abused its discretion in failing to grant leave to allow the testimony where the "[d]efendant was not prejudiced" and the "plaintiffs were ready with their experts").

In sum, section 668.11 is a discovery statute. It "speaks only to the designation of experts, stating different deadlines for plaintiffs and defendants." *Venard v. Winter,* 524 N.W.2d 163, 167 (Iowa 1994). The statute also allows

courts to extend those deadlines for good cause and allows courts to allow a late-designated expert witness to testify even when the deadlines are not met for good cause shown. *See* Iowa Code § 668.11. In determining what constitutes good cause, courts should focus on the specific legal context in which the issue arises. In the context of extending the deadline, the good cause inquiry should focus on the plaintiff's conduct. In the context of excluding the witness's testimony, the good cause inquiry should focus on the plaintiff's conduct and, where the plaintiff's conduct is merely negligent, on the prejudice to the defendant. Courts should be very reluctant to dismiss cases for negligent but nonprejudicial discovery violations, even when the discovery deadline is set by statute. "[N]othing in section 668.11 requires a dismissal of any action for a party's failure to designate experts." *Venard*, 524 N.W.2d at 168.

With the preceding framework in mind, I concur in the court's conclusion that the district court abused its discretion in precluding the plaintiff's expert witness from testifying and then dismissing the case only a few days prior to trial and long after discovery had been completed.