**2022 UT 40**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

LINDSIE WILLIAMSON,
*Appellant,*

*v.*

MGS BY DESIGN, INC.,
*Appellee.*

No. 20210800
Heard September 9, 2022
Filed November 25, 2022

On Appeal of Interlocutory Order

Fourth District, Provo
The Honorable Robert Lund
No. 210401061

Attorneys:

Michael C. Smith, Orem, for appellant

Stephen Quesenberry, Payson, for appellee

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE PETERSEN,
JUSTICE HAGEN, and JUSTICE POHLMAN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1 Lindsie Williamson worked for MGS by Design, Inc. (MGS).
She alleges that MGS violated the Utah Sales Representative
Commission Payment Act (Act)[1] by failing to pay commissions for

---

[1] Before oral argument, the parties stipulated that the 2018
version of the Act should apply to this case. We reference this
version of the Act throughout our opinion.

sales that she made as one of the company's commissioned sales agents.

¶2 The Act governs the payment of commissions in business relationships between principals and commissioned sales representatives. It authorizes a sales representative to sue a principal under its provisions.[2] And it provides that, if found liable, the principal must pay the sales representative three times the amount of owed commissions.[3] The Act also requires that a principal and a sales representative memorialize their business relationship in a signed writing, a copy of which the principal must provide to the sales representative.[4]

¶3 Ms. Williamson claims that MGS never provided her with a written agreement, despite her repeated requests that it do so. But she maintains that, although the parties did not set out their arrangement in writing, they operated under a verbal agreement.

¶4 Ms. Williamson sued MGS under the Act for failing to pay the commissions it owed her under their purported agreement. MGS filed a motion to dismiss, arguing that Ms. Williamson cannot recover under the Act because there was no signed writing. The district court granted MGS's motion to dismiss. We hold that the Act's writing requirement is not a precondition for recovery and, in so doing, reverse the district court's grant of the motion to dismiss.

## Background

¶5 Ms. Williamson worked as an office manager and bookkeeper for MGS from February 2014 to August 2018.[5] She alleges that, in 2016, she and MGS verbally agreed that she would sell goods and

---

[2] UTAH CODE § 34-44-301(1) (2018).

[3] *Id.* § 34-44-301(2)(a).

[4] *Id.* § 34-44-201(1), (3).

[5] This appeal arises from the district court's grant of MGS's motion to dismiss. "When reviewing the propriety of a motion to dismiss, we accept the factual allegations in the complaint as true and interpret those facts and all reasonable inferences drawn therefrom in a light most favorable to the plaintiff as the nonmoving party." *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 3, 108 P.3d 741. Accordingly, we recite the facts as alleged in Ms. Williamson's complaint.

services for MGS as a commissioned sales agent. She further asserts that despite her repeated requests, MGS never prepared a written contract for the two parties to sign.

¶6 According to the complaint, MGS's sales manager did maintain written standard sales prices, commission percentages, and payment schedules that applied to all MGS's independent sales agents, including Ms. Williamson.

¶7 Ms. Williamson sold over $300,000 in goods and services for MGS between January and August 2018. She claims that under the verbal agreement and written sales documents, she earned over $32,000 in commissions, all of which MGS has refused to pay. As a result, Ms. Williamson filed a complaint against MGS alleging that it violated the Act.

¶8 The parties' dispute centers around Parts 2 and 3 of the Act. Part 2 sets forth "Requirements and Prohibitions,"[6] and Part 3 sets forth "Remedies."[7] One of the requirements in Part 2 is that "[t]he business relationship between a sales representative and a principal shall be in a writing signed by both the principal and the sales representative."[8] That writing must "set forth the method by which the sales representative's commission is . . . (a) computed; and (b) paid."[9] And the principal must "provide the sales representative with a copy of the signed writing."[10]

¶9 In Part 3, the Act authorizes a sales representative to sue a principal.[11] If the principal is found liable, the Act allows the sales representative to recover three times the amount of unpaid commissions plus attorney fees and court costs.[12] Ms. Williamson seeks such a recovery.

¶10 MGS filed a motion to dismiss, arguing that the Act bars the claim because the parties' business relationship was never put into a

---

[6] *See* UTAH CODE §§ 34-44-201 to -203 (2018).

[7] *See id.* §§ 34-44-301 to -302.

[8] *Id.* § 34-44-201(1).

[9] *Id.* § 34-44-201(2).

[10] *Id.* § 34-44-201(3).

[11] *Id.* § 34-44-301(1).

[12] *Id.* § 34-44-301(2).

signed writing, as Part 2 of the Act requires. The district court granted the motion, and we granted Ms. Williamson's petition for interlocutory appeal. We have jurisdiction under Utah Code section 78A-3-102(3)(j).

**Standard of Review**

¶11 "The grant of a motion to dismiss presents a question of law that we review for correctness."[13]

**Analysis**

¶12 The parties disagree about the meaning of section 301 of the Act, which states, in relevant part, that "[a] sales representative may bring a civil action . . . against a principal for failure by the principal to comply with . . . any provision of an agreement relating to the payment of commission."[14] MGS argues that this "agreement" must be in the form of a signed writing for a court to consider a sales representative's claim. For support, MGS relies on another part of the Act that requires a business relationship between a sales representative and a principal to be in a signed writing.[15] Ms. Williamson contends that, because the Act's writing requirement is independent of the remedies provisions, the signed writing is not a prerequisite for recovery. We agree with Ms. Williamson's reading of the Act.

### I. The Act Does Not Condition Recovery for Unpaid Commissions on a Signed Writing

¶13 "It is well settled that when faced with a question of statutory interpretation, 'our primary goal is to evince the true intent and purpose of the [l]egislature.' And '[t]he best evidence of the legislature's intent is the plain language of the statute itself.'"[16] "[W]e assume, absent a contrary indication, that the legislature used each term advisedly according to its ordinary and usually accepted meaning."[17] Because "we presume[ ] that the expression of one

---

[13] *Haik v. Jones*, 2018 UT 39, ¶ 9, 427 P.3d 1155.

[14] UTAH CODE § 34-44-301(1)(a) (2018).

[15] *See id.* § 34-44-201(1).

[16] *State v. Thurman*, 2022 UT 16, ¶ 18, 508 P.3d 128 (second alteration in original) (citations omitted).

[17] *Id.* (citation omitted).

[term] should be interpreted as the exclusion of another," we "seek to give effect to omissions in statutory language by presuming all omissions to be purposeful."[18] And we examine the plain language in light of the "relevant context of the statute," which includes the overall structure of the statutory scheme.[19]

¶14 Here, the Act's plain language unambiguously supports Ms. Williamson's view that recovery under Utah Code section 34-44-301 is not conditioned on a signed writing. We base this conclusion on the ordinary meaning of the term "agreement," the definitions provided in the Act, and the Act's structure. And because the Act's text "is unambiguous and provides a workable result, we need not resort to other interpretive tools, and our analysis ends."[20]

*A. The Act's Text and Structure Support Ms. Williamson's Reading of the Act*

¶15 Section 301 of the Act provides that a sales representative may sue a principal for failure to comply with "any provision of an agreement relating to the payment of commission."[21] The Act does not define the term "agreement." But its ordinary and usually accepted meaning encompasses more than just written contracts.[22] The term "agreement" is defined broadly as "[a] mutual understanding between two or more persons about their relative rights and duties regarding past or future performances."[23] Absent a contrary indication, we assume the legislature used the term

---

[18] *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (alterations in original) (citation omitted) (internal quotation marks omitted).

[19] *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 12, 248 P.3d 465.

[20] *S. Utah Valley Elec. Serv. Dist. v. Payson City*, 2021 UT 68, ¶ 20, 502 P.3d 272 (citation omitted).

[21] UTAH CODE § 34-44-301(1)(a) (2018).

[22] *See, e.g.*, *Agreement*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The term 'agreement,' although frequently used as synonymous with the word 'contract,' is really an expression of greater breadth of meaning and less technicality." (quoting 2 Henry J. Stephen, *Stephen's Commentaries on the Laws of England* 5 (L. Crispin Warmington ed., 21st ed. 1950))).

[23] *Id.*

"agreement" advisedly according to this ordinary and usually accepted meaning.[24]

¶16 MGS argues there are indications, found in the Act's definitions of other terms, that the legislature intended to use the term "agreement" more narrowly. Specifically, MGS suggests that the term "agreement" must be read in light of the term "business relationship," which the Act defines as "an agreement that governs the relationship of principal and sales representative."[25] MGS also correctly points out that the existence of a business relationship triggers jurisdiction under the Act.[26]

¶17 But the Act's definition of "business relationship" uses the broad term "agreement" and omits mention of a signed writing. So the definition of "business relationship" itself does nothing to narrow the term "agreement" in section 301 to anything other than its ordinary and usually accepted meaning.

¶18 MGS points us next to another section of the Act that states, "The business relationship between a sales representative and a principal shall be in a writing signed by both the principal and the sales representative."[27] MGS argues that because a business relationship "shall be in a writing"—and because the existence of a business relationship triggers jurisdiction under the Act—the "agreement" referred to in section 301 must be a signed writing. But MGS conflates the definition of "business relationship" with this separate writing requirement. In fact, the Act's writing requirement presumes that the business relationship already exists.[28] And it says that this preexisting relationship "shall be *in* a writing"—not that it shall be *created by* a writing.[29] So, as the Act is written, a business relationship arises and jurisdiction is triggered once there is an

---

[24] *See supra* ¶ 13.

[25] *Id.* § 34-44-102(1).

[26] *See id.* § 34-44-103(1) ("An action under this chapter may be brought against a principal in a court of this state if . . . the principal enters into a business relationship in this state with a sales representative to solicit orders for a product or a service . . . .").

[27] *Id.* § 34-44-201(1).

[28] *See id.*

[29] *Id.* (emphasis added).

"agreement"—broadly speaking—"that governs the relationship of principal and sales representative."[30] Just because the parties fail to reduce their relationship to a signed writing in compliance with the writing requirement does not mean that no relationship exists. We decline to incorporate the Act's writing requirement into the definition of "business relationship" where the legislature chose not to define it that way.

¶19 The Act's structure further supports our determination that recovery for unpaid commissions is not conditioned on a signed writing. Subsection 301(1) provides a sales representative with three options for relief under the Act. First, a sales representative may bring an action against a principal for failure to comply with "any provision of an agreement relating to the payment of commission."[31] Second, a sales representative may bring an action against a principal for failure to pay all commissions due to the sales representative in accordance with the writing required by section 34-44-201.[32] Third, a sales representative may bring an action against a principal for failure to comply with its obligations when the parties' business relationship terminates.[33]

¶20 The parties disagree about the meaning of the first two options for relief. Ms. Williamson points out that only the second option mentions the required writing. She argues that the term "agreement" described in the first option must encompass more than just the required writing; otherwise, the provision would be rendered superfluous because the second option already provides relief "in accordance with" the required writing. According to Ms. Williamson's reading, the first option offers relief even in circumstances where no written agreement exists, while the second offers relief in accordance with the required writing.

¶21 MGS offers a different reading of the first two options for relief. It asserts that the term "agreement" described in the first

---

[30] *Id.* § 34-44-102(1); *see id.* § 34-44-103(1).

[31] *Id.* § 34-44-301(1)(a).

[32] *See id.* § 34-44-301(1)(b) (allowing a sales representative to sue for a principal's failure to comply with Utah Code section 34-44-202(1)).

[33] *See id.* (allowing a sales representative to sue for a principal's failure to comply with Utah Code section 34-44-202(2)).

option does in fact mean the required writing. Under MGS's reading, then, both the first and second options for relief refer to the required writing. According to MGS, the first option is broader than the second because it encompasses *any provision* of an agreement relating to the payment of commission, while the second option encompasses only a principal's failure to pay all commissions due to the sales representative. Based on this interpretation, a sales representative could, for example, sue under the first option for a principal's failure to comply with a provision requiring the principal to reimburse the sales representative for expenses incurred while making a sale, because such a provision is a "provision of an agreement relating to the payment of commission." According to MGS's interpretation, this remedy would not be available under the second option because a principal's breach of a contract provision about incurred expenses is separate from its failure to pay all commissions due to the sales representative.

¶22 This interpretation would render the second option for relief superfluous. If, as MGS suggests, the first option required a writing, then a sales representative could use *it* to obtain relief for a principal's failure to pay all commissions due to the sales representative in accordance with the writing required by section 34-44-201. Yet this is the same remedy that the second option provides.

¶23 MGS acknowledges that under its reading, the first option for relief is broad enough to encompass the relief provided by the second option. It nevertheless contends that the legislature chose to take a belt-and-suspenders approach by offering two separate options for the same relief. But this explanation ignores a fundamental principle of statutory interpretation. When interpreting a statute, "we seek to render all parts [of the statute] relevant and meaningful, and we accordingly avoid interpretations that will render portions of a statute superfluous or inoperative."[34] Because Ms. Williamson's interpretation renders all three options for relief relevant and meaningful, while MGS's interpretation renders portions of the remedies provisions superfluous, we adopt Ms. Williamson's interpretation.

---

[34] *Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 15, 24 P.3d 958 (citations omitted) (internal quotation marks omitted).

## B. MGS's Other Arguments Are Unavailing

¶24 Although MGS makes additional arguments in support of its reading of the Act, none of them changes our view.

¶25 First, MGS suggests that because the Act allows for treble damages—a "hefty penalty"—"it makes sense that the legislature wanted the business relationship between the two parties to be in writing." Although this explanation is plausible, MGS provides no textual support for its claim. Moreover, as Ms. Williamson emphasizes, if the legislature were to condition treble damages on a written agreement, a principal would be incentivized *not* to put an agreement with a sales representative into writing. If a sales representative were prohibited from obtaining remedies under the Act absent a signed writing, then a principal could avoid having to pay treble damages, plus the sales representative's attorney fees and court costs, by refusing to memorialize the parties' agreement in writing. MGS's motion to dismiss underscores this point. By moving to dismiss Ms. Williamson's claim, MGS is attempting to sidestep liability under the Act through its failure to comply with the writing requirement.

¶26 Second, MGS argues that Ms. Williamson's reading fails to harmonize the various sections of the Act, and that section 301 cannot be read separately from the writing requirement. "When considering statutes relating to the same subject matter, we attempt to construe them in harmony, . . . such that effect is given to every provision in all of them."[35] But Ms. Williamson's reading presents no harmony problem, as the Act's plain language allows effect to be given to every provision without the extra step of grafting the writing requirement onto section 301. The Act can, in one section, require business relationships to be in writing, while also holding principals accountable for their promises where there is no writing.

¶27 Finally, both parties cite records from the legislative history in support of their respective readings of the Act. We do not consider these arguments, because the Act's text is unambiguous and provides a workable result.[36]

---

[35] *I.M.L. v. State*, 2002 UT 110, ¶ 26, 61 P.3d 1038 (citations omitted) (internal quotation marks omitted).

[36] *See S. Utah Valley Elec. Serv. Dist. v. Payson City*, 2021 UT 68, ¶ 20, 502 P.3d 272; *supra* ¶ 14.

II. We Deny Ms. Williamson's Request for Attorney Fees

¶28 Ms. Williamson requests that we order MGS to pay the cost of her attorney fees incurred by this appeal. The Act provides that where a principal "is found liable" for failure to pay commissions, it "is liable to the sales representative for . . . reasonable attorney fees."[37] In this appeal, we do nothing more than reverse the district court's grant of MGS's motion to dismiss. So because MGS has not, at least at this point, been found liable under the Act, we reject Ms. Williamson's request for attorney fees.

**Conclusion**

¶29 We conclude that under the Act's plain text, the writing requirement is not a prerequisite for a sales representative to sue a principal under the Act. Because Ms. Williamson alleged in her complaint that MGS agreed to pay commissions to her but failed to do so, we reverse the district court's grant of MGS's motion to dismiss. Finally, we reject Ms. Williamson's request for attorney fees because MGS has not, at this point, been found liable under the Act.

————————

[37] UTAH CODE § 34-44-301(2)(b) (2018).