2025 UT App 113

# THE UTAH COURT OF APPEALS

STEPHANIE E. SANKEY,
Appellant,
*v.*
CAMERON D. SAWYER, COURTNEY A. SAWYER, PICTURE PICTURE
FILMS LLC, AND TIM TIMMERMAN, HOPE OF AMERICA LLC,
Appellees.

Opinion
No. 20240530-CA
Filed July 25, 2025

Fourth District Court, Provo Department
The Honorable Robert A. Lund
No. 200401083

Stephanie E. Sankey, Appellant Pro Se

Gerald M. Salcido and Jon M. Hogelin,
Attorneys for Appellees

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and AMY J. OLIVER concurred.

HARRIS, Judge:

¶1　After a bench trial, the court issued a written ruling adverse to Stephanie Sankey and in favor of her litigation opponents, Cameron Sawyer, Courtney Sawyer, Picture Picture Films LLC, and Tim Timmerman, Hope of America LLC (collectively, the Sawyers). Sankey attempts to appeal that ruling, and the issues presented here are (a) whether her appeal is timely and (b) if not, whether the trial court abused its discretion in denying her motion for an extension of time within which to file a timely appeal. For the reasons discussed herein, we conclude that Sankey's appeal was not timely and that the court did not abuse its discretion in denying Sankey's request for an extension

of time. Accordingly, we affirm the court's denial of Sankey's motion for an extension of time and dismiss her appeal.

## BACKGROUND

¶2 While she was in law school in Utah in the early 2000s, Sankey met Cameron Sawyer—a classmate's cousin—and the two became friends. After she graduated, Sankey moved back to her home state of Arizona to work as a prosecutor, but she and Cameron kept in touch, and Sankey followed Cameron's career in the film industry. In 2014, Cameron and his sister, Courtney Sawyer, formed two companies—Picture Picture Films LLC and Tim Timmerman, Hope of America LLC—with the goal of producing a movie entitled "Tim Timmerman, Hope of America." To finance the movie, the Sawyers sought investors. Sankey was one of those investors; she made three investments totaling $75,000. Unfortunately, the movie's performance turned out to be "abysmal," and Sankey did not receive any return on her investment. Later, she filed suit in Utah against the Sawyers for affinity fraud, negligent misrepresentation, fraudulent nondisclosure, breach of fiduciary duty, and negligence, among other causes of action.

¶3 Following a two-day bench trial, the court issued a written "Ruling and Judgment" (the Ruling) determining that Sankey had "failed to carry her burden of proof as to any of her claims" and dismissing the complaint with prejudice. At the end of the Ruling, the court noted that the Sawyers, prior to trial, had made an offer of judgment pursuant to rule 68 of the Utah Rules of Civil Procedure and that Sankey had rejected that offer. The court also noted that its "trial verdict [was] less favorable than the offer" that Sankey rejected. Accordingly, the court ruled that "Sankey is liable to [the Sawyers] for the cost[s] they incurred after the date of the offer," and it instructed the Sawyers to "pursue judgment for those costs by separate motion and affidavit." And it concluded the Ruling by stating that it would "enter a final

judgment after the resolution of the allocation of costs." The Ruling was entered on September 5, 2023.

¶4     The Sawyers never filed a motion or affidavit related to costs.[1] In fact, nothing at all happened in the case for more than six months following entry of the Ruling. Finally, on March 18, 2024—more than 190 days after entry of the Ruling—Sankey filed a motion for enlargement of time to file a notice of appeal. In that motion, Sankey asserted that "good cause, or at a minimum, excusable neglect exist[ed]" to justify enlarging the time for her to appeal. In particular, Sankey claimed that good cause existed because the Sawyers "were responsible for filing a Proposed Judgment within 14 days" and never did so, and because she did not know the status of the case and "ha[d] been waiting for" the trial court to issue a final order.

¶5     A few weeks later, on April 8, 2024, the trial court issued a written order denying Sankey's motion. In that order, the court noted that, while Sankey may not have had "access to the Utah court's electronic system to check" on the status of the case, she "could have easily called the court," as she had about other matters, "to inquire about the status of the case." The court also emphasized that Sankey "is an attorney with over 20 years of experience" and is therefore "well acquainted" with the legal system and is "accustomed to interacting with" court clerks. The court determined that, "[w]hile . . . the [Sawyers] were dilatory," Sankey "was equally dilatory." It also observed that, under applicable rules, Sankey was authorized to prepare and serve a

---

1. The Sawyers assert that they never filed a motion for costs because, they claim, Sankey represented to them that if they did not seek costs, she would not appeal. Sankey, for her part, denies that any such representation or agreement was ever made. We do not purport to resolve this factual dispute in this opinion, and the reasons for the Sawyers' failure to file a motion or affidavit regarding costs are ultimately immaterial to the appeal.

proposed judgment after the Sawyers failed to do so. The court thus concluded that Sankey had "failed to demonstrate good cause or excusable neglect," and it accordingly denied her motion.

ISSUES AND STANDARDS OF REVIEW

¶6     Sankey now appeals, asserting that her appeal is timely and that, even if it isn't, the trial court abused its discretion in denying her motion for enlargement of time. As a general matter, whether an appeal is timely filed presents a question of law that we analyze in the first instance. *See In re Estate of Pahl*, 2007 UT App 389, ¶ 9, 174 P.3d 642 (stating that a determination as to whether "we have jurisdiction to reach" issues on the merits "is a question of law").

¶7     However, we review deferentially a trial court's ruling on a motion for extension of time to file a notice of appeal. *See Bennett v. Bigelow*, 2013 UT App 180, ¶ 8, 307 P.3d 641 ("We give the [trial] court's ruling on a rule 4(e) motion broad deference on review." (cleaned up)); *see also Serrato v. Utah Transit Auth.*, 2000 UT App 299, ¶ 6, 13 P.3d 616 ("The discretion of the trial court to grant or deny a Rule 4(e) motion is very broad, highly fact dependent, and fundamentally equitable in nature."). In particular, we review a court's determination regarding the existence of good cause for abuse of discretion. *See Tomlinson v. Department of Workforce Serv.*, 2012 UT App 148, ¶¶ 4–5, 278 P.3d 1098 (per curiam); *see also State v. Sanchez*, 2017 UT App 229, ¶ 2, 409 P.3d 156 (per curiam) (stating that, under an abuse of discretion standard, we will reverse the trial court's decision only if we determine that "no reasonable person would take the view adopted by the [trial] court" (cleaned up)). But to the extent that our analysis involves interpreting rules of procedure, we review a court's interpretation "for correctness." *In re C.D.S.*, 2023 UT 11, ¶ 15, 531 P.3d 217 (cleaned up).

ANALYSIS

¶8     The first question we must address is whether Sankey's appeal was timely filed, and in this case, that question turns on whether the Ruling was the sort of order that started the appellate-finality clock ticking. For the reasons discussed, we conclude that it was, that (in this particular situation) Sankey needed to file a notice of appeal within 180 days of the Ruling's entry, and that her failure to do so renders her appeal untimely. That conclusion compels us to then assess Sankey's challenge to the trial court's denial of her motion for enlargement of time within which to file an appeal.

I. Timeliness

¶9     "As a general rule, an appellate court does not have jurisdiction to consider an appeal unless the appeal is taken from a final order or judgment." *In re J.E.*, 2023 UT App 3, ¶ 17, 524 P.3d 1009 (cleaned up); *see also* Utah R. App. P. 3(a)(1) ("Except as otherwise provided by law, a party may appeal a final order or judgment from a [trial] court . . . ."). This general rule is known as the "final judgment rule." *See Williams v. State*, 716 P.2d 806, 807 (Utah 1986). A "final judgment" is one that "ends the controversy between the parties prior to appeal." *Smith v. Volkswagen SouthTowne, Inc.*, 2024 UT App 33, ¶ 13, 547 P.3d 198 (cleaned up), *cert. denied*, 558 P.3d 90 (Utah 2024). "The final judgment rule promotes efficiency by preventing the piecemeal litigation and seriatim appeals that would result if litigants were permitted, by right, to immediately appeal any adverse ruling by a trial court." *In re J.E.*, 2023 UT App 3, ¶ 17.

¶10     Sankey argues that the Ruling was not a final, appealable order, and she maintains that her "appellate rights were never triggered" by entry of the Ruling. She acknowledges that the Ruling contained final dispositive rulings dismissing all of the causes of action she brought against the Sawyers, but she asserts that the Ruling was not final—and therefore did not start the

appellate-finality clock ticking—because it awarded costs to the Sawyers and left the amount of those costs unquantified and open for later determination.[2] But Sankey's argument fails because, as we explain, a ruling is still final even if the amount of awarded costs remains to be determined.

¶11     Our supreme court has long held that "disputes regarding court costs need not be resolved in order to have a final judgment for purposes of appeal." *Beddoes v. Giffin*, 2007 UT 35, ¶ 5, 158 P.3d 1102; *see also id.* ¶ 12 ("Court costs and other matters clerical in nature are not material and do not need to be resolved for a judgment to be final for the purposes of an appeal."); *Dale K. Barker Co. v. Bushnell*, 2014 UT App 199, ¶ 9, 334 P.3d 504 (citing *Beddoes* and stating that "disputes as to court costs" do not have to "be resolved in order to have a final judgment for appeal" (cleaned up)).[3]

---

2. As noted, *see supra* ¶ 3, the trial court awarded costs pursuant to rule 68 of the Utah Rules of Civil Procedure, which states that should one party reject a settlement offer made pursuant to that rule that is more favorable than the eventual award, then "the offeree shall pay the offeror's costs incurred after the offer." Utah R. Civ. P. 68(b). Here, the trial court could potentially also have awarded costs to the Sawyers under rule 54 as the prevailing party, *see id.* R. 54(d)(1) ("Unless a statute, these rules, or a court order provides otherwise, costs should be allowed to the prevailing party."), but it elected not to do so and made no determinations as to which party had prevailed. The fact that the court chose to award costs pursuant to rule 68 as opposed to rule 54 does not affect our analysis.

3. Utah is not alone in determining that a judgment or order is final even if costs remain to be adjudicated. *See, e.g., Pfeifer v. John Crane, Inc.*, 164 Cal. Rptr. 3d 112, 148 (Cal. Ct. App. 2013) ("A

(continued…)

¶12   To be sure, some of the rules regarding appellate finality and timeliness were amended in 2015 and 2016, after *Beddoes* was issued. In particular, those rules were changed to clarify that "[a] motion or claim for attorney fees does not affect the finality of a judgment for any purpose" and that "the time in which to file the notice of appeal runs from the disposition of the motion or claim." *See* Utah R. Civ. P. 58A(f); *see also id.* R. 58A advisory committee's note to 2016 amendment ("The 2016 amendments in paragraphs (b) and (f) are part of a coordinated effort with the Advisory Committee on the Rules of Appellate Procedure to change the effect of a motion for attorney fees on the appealability of a judgment."); Utah R. App. P. 4(b)(1)(F) (clarifying that "[a] motion or claim for attorney fees" is one of the motions that will toll the time for filing a notice of appeal until "entry of the dispositive order" on the motion); *id.* R. 4 advisory committee's note to 2016 amendment (2017) ("The 2016 amendment added Subdivision (b)(1)(E) and (F)."). And these amendments were apparently intended to "effectively overturn" previous Utah Supreme Court precedent—other than *Beddoes*—that had held to the contrary. *See* Utah R. Civ. P. 58A advisory committee's note to 2016 amendment (noting that the amendments "effectively overturn[ed]" *ProMax Dev. Corp. v. Raile*, 2000 UT 4, 998 P.2d 254, and *Meadowbrook, LLC v. Flower*, 959 P.2d 115 (Utah 1998)).

¶13   But these amendments changed the landscape only with regard to attorney fees, and not with regard to costs. The text of these amendments mentions only "attorney fees"; it contains no mention of costs. *See id.* R. 58A(f); Utah R. App. P. 4(b)(1)(F); *see generally Williamson v. MGS by Design, Inc.*, 2022 UT 40, ¶ 13, 521 P.3d 866 (stating that, when interpreting statutes, courts should

judgment is final and appealable if all that remains is a determination of costs and interest."); *In re Estate of Kunsch*, 794 N.E.2d 1059, 1064 (Ill. App. Ct. 2003) ("Generally, a judgment or order is final even if there remains for determination issues regarding costs." (cleaned up)).

"give effect to omissions in statutory language by presuming all omissions to be purposeful" (cleaned up)); *Aequitas Enters., LLC v. Interstate Inv. Group, LLC,* 2011 UT 82, ¶ 15, 267 P.3d 923 ("When we interpret a procedural rule, we do so according to our general rules of statutory construction." (cleaned up)). And the advisory committee note regarding one of those amendments states that it was intended "to change the effect of a motion for *attorney fees* on the appealability of a judgment." Utah R. Civ. P. 58A advisory committee's note to 2016 amendment (emphasis added). Thus, our supreme court's pronouncement in *Beddoes* regarding costs is still valid today: an order that leaves only costs unadjudicated but otherwise resolves all outstanding claims and defenses is a final and appealable order. *See* 2007 UT 35, ¶ 5.

¶14 In this case, the Ruling resolved all of Sankey's claims and causes of action against the Sawyers, and it left nothing more to be decided on those claims. All that remained for the court to do following entry of the Ruling was to quantify the amount of costs to which the Sawyers were entitled. Under these circumstances, and under *Beddoes*, the Ruling was a final order that, in this case, started the appellate-finality clock ticking.

¶15 Sankey correctly points out, however, that no party filed a separate judgment following entry of the Ruling, as required by rule 58A(a). That rule requires that "[e]very judgment and amended judgment must be set out in a separate document ordinarily titled 'Judgment'—or, as appropriate, 'Decree.'" The purposes of this separate document rule are to "(1) clearly signal that all claims involving all parties have been adjudicated, (2) document the resolution of each claim and the resulting rights and liabilities of all parties, and (3) start the post-judgment motion and appeals clock as soon as the court signs and dockets it." *Griffin v. Snow Christensen & Martineau*, 2020 UT 33, ¶ 18, 467 P.3d 833. To achieve these purposes, the separate document should be "self-contained," "note the relief granted," and "omit" or

"substantially omit . . . the [trial court's] reasons for disposing of the parties' claims." *Id.* ¶ 20 (cleaned up).

¶16　The Ruling itself does not qualify as a "separate document" within the meaning of rule 58A(a). It is twenty-three pages long and is chock-full of the trial court's reasons for disposing of Sankey's claims. We thus agree with Sankey that no separate document was ever filed in this case.

¶17　But that fact ends up being of no assistance to Sankey here. The drafters of the 2015 and 2016 amendments to rule 58A(a)— the amendments that added the "separate document" requirement to the Utah rules—contemplated that there might be cases in which the parties fail to file a separate document as required. *See* Utah R. Civ. P. 58A advisory committee's note to 2015 amendment (stating that the drafters had been asked to address "the 'hanging appeals' problem" and had attempted to solve it by enacting the 150-day rule discussed below). To deal with such cases, the rule contains the following provision:

> If a separate document is required, a judgment is complete and is entered at the earlier of these events: (A) the judgment is set out in a separate document signed by the judge and recorded in the docket; *or* (B) 150 days have run from the clerk recording the decision, however designated, that provides the basis for the entry of judgment.

*Id.* R. 58A(e)(2) (emphasis added).

¶18　Rule 58A(e)(2)(B) is applicable here because a separate document was required and none of the parties ever filed one. In this situation, "judgment is complete" when "150 days have run from the clerk recording the decision . . . that provides the basis for the entry of judgment." *Id.* The Ruling is the decision that provides the basis for the entry of judgment, and it was entered on September 5, 2023. Thus, judgment was "complete," despite

the parties' collective failure to file a separate judgment document, 150 days after entry of the Ruling. By our count (and by the trial court's), that occurred on February 2, 2024. Accordingly, "entry of the judgment" for purposes of calculating Sankey's time for filing a notice of appeal occurred on that date. *See* Utah R. App. P. 4(a) (making clear that the time for filing a notice of appeal is computed from "the date of entry of the judgment or order appealed from").

¶19    And under governing rules, once "entry of the judgment" has occurred, an appellant has thirty days to file a notice of appeal. *Id.* (stating that a notice of appeal is to be filed "within 30 days after the date of entry of the judgment or order appealed from"). That thirty-day clock started ticking on February 2, 2024, meaning that (due to leap year and the fact that March 3 was a Sunday) Sankey had until Monday, March 4, 2024 to file a timely notice of appeal. And Sankey does not dispute that she failed to do so.

¶20    Thus, because Sankey failed to file a notice of appeal on or before her deadline to do so, her appeal is untimely.

## II.  Good Cause or Excusable Neglect

¶21    Litigants who miss their deadline for filing a notice of appeal have one last chance to fix the problem: they can ask the trial court to extend the time for filing the notice. *See* Utah R. App. P. 4(e). Such a request must be made by motion, and it must be filed either "before the expiration of" the notice-of-appeal filing deadline—in which case the movant must demonstrate "good cause"—or "not later than 30 days after the expiration of" that deadline—in which case the movant must demonstrate either "good cause or excusable neglect." *Id.*

¶22    Sankey filed such a request with the trial court, and she did so on March 18, 2024, after the expiration of the deadline but within the thirty-day grace period thereafter. Thus, Sankey's motion qualifies as timely, but because she filed the motion after

the appeal deadline had run but within thirty days thereafter, she must meet the requirements of rule 4(e)(2), which require her to make a "showing of good cause or excusable neglect."

¶23 The trial court determined that Sankey had failed to make that showing, and Sankey challenges that determination here on appeal. In particular, the court found Sankey to have been "equally dilatory" in that she did not "reach out to the court to inquire about the status of her case" and she did not submit a proposed separate judgment document herself. In view of its conclusion that Sankey had been "just as dilatory and lackadaisical as" the Sawyers, the court found that Sankey had "failed to demonstrate good cause or excusable neglect." As noted, *see supra* ¶ 7, we review that determination deferentially, and for the reasons discussed we discern no abuse of discretion in the trial court's determination.

¶24 Although often used in tandem with one another, good cause and excusable neglect are different standards. As our supreme court has explained it, excusable neglect "is an admittedly neglectful delay that is nevertheless excused by special circumstances," while good cause "pertains to special circumstances that are essentially beyond a party's control." *Reisbeck v. HCA Health Serv. of Utah, Inc.*, 2000 UT 48, ¶ 13, 2 P.3d 447 (emphasis omitted).[4] Of the two, "good cause" is "a more liberal standard" that is easier to demonstrate. *Id.* ¶ 14.

¶25 Sankey first argues that she showed good cause or excusable neglect because the trial court instructed the Sawyers—

---

4. The court in *Reisbeck* was interpreting a previous version of rule 4(e) of the Utah Rules of Appellate Procedure. *Compare Reisbeck v. HCA Health Serv. of Utah, Inc.*, 2000 UT 48, ¶ 5, 2 P.3d 447 (quoting the then-effective version of the rule), *with* Utah R. App. P. 4(e)(2). However, the version of the rule interpreted in *Reisbeck* is substantively similar, for our purposes, to the current rule.

and not her—to prepare an affidavit of costs, and she maintains that, under such circumstances, her appellate-finality clock has, even now, not started ticking because the Sawyers never filed any such affidavit. But we have already rejected this argument. *See supra* Part I. Sankey's 150-day clock started ticking when the Ruling was entered, and the fact that quantification of costs remained open did not change the landscape.

¶26   Next, and relatedly, Sankey takes issue with the trial court's conclusion that she was dilatory, and she asserts that she acted diligently in checking her email regularly to see if the Sawyers had filed a motion or affidavit related to costs. We find her argument unpersuasive for two main reasons.

¶27   First, as the trial court noted, if Sankey had been unsure about the timeline for appeal, finality, or the status of the costs situation, she could have asked the court or the Sawyers. In its ruling on Sankey's motion, the trial court emphasized that Sankey "could have called the court to see if any additional documents had been filed," and it noted that, instead, "she chose to take no action for a period of 192 days." Furthermore, the trial court noted that the "fact that she did eventually learn of the status of the case . . . establishes that she could have done so earlier." We discern no abuse of discretion in the court's determinations in this regard.

¶28   Second, although the trial court did direct the Sawyers to prepare an affidavit of costs and a separate judgment document, the applicable rule authorized Sankey to prepare a separate judgment document in the event that the Sawyers failed to do so. To be sure, the rule commands "[t]he prevailing party or a party directed by the court" to "prepare and serve on the other parties a proposed judgment for review and approval as to form." Utah R. Civ. P. 58A(c)(1). But the rule accounts for the possibility that the assigned party might shirk that duty, stating that "[i]f the prevailing party or party directed by the court fails to timely serve a proposed judgment, any other party may prepare a proposed

judgment and serve it on the other parties." *Id.* Thus, once the Sawyers failed to prepare and serve a costs affidavit and separate judgment document, the rule authorized Sankey to step in and prepare a proposed separate judgment document. The trial court was referring to this rule when it noted that Sankey "could have availed herself of the latitude given under [the rules] and drafted a proposed judgment herself." With these facts in mind, the court found that, "[a]ll in all, . . . [Sankey] was just as dilatory" as the Sawyers, and on that basis the court found that Sankey had "failed to demonstrate good cause or excusable neglect."

¶29   On this record, the court did not abuse its discretion in making this finding. While it is perhaps possible that another factfinder could have reached a different conclusion on these facts, we cannot say that "no reasonable person [could have taken] the view adopted by the [trial] court." *See State v. Sanchez*, 2017 UT App 229, ¶ 2, 409 P.3d 156 (per curiam) (cleaned up); *see also supra* ¶ 7. We thus reject Sankey's challenge to the court's good-cause and excusable-neglect finding.[5]

---

5. The Sawyers also seek an award of attorney fees incurred on appeal, pursuant to rule 33 of the Utah Rules of Appellate Procedure. That rule authorizes us to award fees when an appeal is "frivolous," *see* Utah R. App. P. 33(a), and it defines a "frivolous appeal" as "one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law," *id.* R. 33(b). "The sanction for bringing a frivolous appeal is applied only in egregious cases, lest there be an improper chilling of the right to appeal erroneous lower court decisions." *Staszkiewicz v. Thomas*, 2024 UT App 183, ¶ 23 n.3, 562 P.3d 723 (cleaned up), *cert. denied*, 568 P.3d 260 (Utah 2025). While we are ultimately unpersuaded by Sankey's arguments, we do not consider her appeal to be so "egregious" as to warrant sanctions. We therefore decline the Sawyers' invitation to award attorney fees on appeal.

CONCLUSION

¶30    When the Ruling was entered on September 5, 2023, the 150-day appellate-finality clock referenced in rule 58A(e)(2)(B) began to run, meaning that Sankey's thirty-day deadline for filing a notice of appeal began to run on February 2, 2024. Because she filed no notice of appeal within the next thirty days, her appeal is untimely. And the trial court did not abuse its discretion in denying Sankey's motion for enlargement of her time to file a notice of appeal. We therefore affirm the court's order denying Sankey's motion for an extension of time and dismiss her untimely appeal.

_____